FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

JUN 13 AM 9:51

ESTATE OF ROBERT HAROLD MILLER,
By and through its Personal
Representative, JEAN MILLER,

        Plaintiff,

vs.                               Case No.: 2:01-CV-545-FtM-29DNF

FORD MOTOR COMPANY, a foreign
Corporation and COOPER TIRE & RUBBER
COMPANY, a foreign corporation,

        Defendants.
_____/

## PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING TESTIMONY AND EVIDENCE RELATING TO ACCIDENT STATISTICS, WITH BRIEF INCORPORATED

**COMES NOW** the Plaintiff, by and through her attorneys of record, and moves this Court *in limine* for an Order excluding at trial 1) all evidence of and any references to accident statistics that have been proffered by Ford's expert witness, William Wecker, and prohibiting the Defendants from attempting to introduce any statistical evidence, as there is no evidence that the accidents which comprise the statistics are substantially similar to the accident at issue, or that the vehicles which are compared are substantially similar to the Ford Explorer at issue. Plaintiff so moves for the reason that this evidence is inadmissible under F.R.E. 403 and does not meet the criteria for admissibility under F.R.E. 702.

In the event that this Court does not exclude the statistical data, Plaintiffs request that an *in camera* evidentiary hearing be had to test the validity and reliability of accident statistics and

1

statistical data Mr. Wecker intends to introduce and of Mr. Wecker's testimony before any evidence of or references to the statistics are heard by a jury and before the expert testifies.

The Plaintiff believes that Defendant Ford Motor Company, (hereinafter "Ford"), may attempt to offer at the time of trial statistical evidence of other accidents to buttress its defense that the Ford Explorer rollover accident rates and death and injury rates compare favorably to other sport utility vehicles. There are numerous problems with this evidence, but the two most significant problems are:

1. The statistical comparison of vehicles prepared by the expert, William Wecker, compares the Ford Explorer to other vehicles which are not substantially similar to the Ford Explorer;

2. The accidents which form the basis of the statistics are not substantially similar to the accident in this case.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE

### I. Introduction

Ford's expert witness, William Wecker, in his report dated November 4, 2003, offered a series of eight opinions, all of which are based on a comparison between the Ford Explorer and other "compact utility vehicles of the same vintage, body type and drive configuration." (See Exhibit "A," Wecker report dated November 4, 2003.) The basis of all of Mr. Wecker's opinions are databases of accident information maintained by several state and federal agencies including FARS (Fatal Accident Reporting Statistics) and NASS (National Accident Sampling System), as well as computer databases maintained by several state agencies concerning accidents in the state (the "state databases"). According to Mr. Wecker's report and the materials he reviewed to prepare

his report, Mr. Wecker did not review any of the accident reports in any of the comparison accidents and there is nothing to indicate that he compared the accident in this case to similar types of accidents contained in the databases upon which he relies. No where in his report does he discuss his method for arriving at his opinions, nor does he state whether he made any effort to eliminate any dis-similar accidents from his statistics. This failure to eliminate dis-similar accidents from the comparison is a fatal flaw which makes the entire exercise inherently suspect and misleading.

The failure to compare similar accidents to similar accidents, and the resulting lack of admissibility of the analysis is so basic, that Ford Motor Company would have to agree that the evidence should not be admitted. In fact, Ford's attorneys in the *California Explorer Cases*, have themselves made precisely the same motion, for the very same reasons, in a case involving the rollover of a Ford sport utility vehicle. (See Exhibit "B," Defendant Ford Motor Company's Motion In Limine to Exclude Other Accident Statistics, *Raimondi v. Ford,* Case No. H197262-5, Alameda County Superior Court, 1999.) In that case, Ford's attorneys argue that: "plaintiffs cannot show that the proffered statistics represent accidents which are substantially similar to the subject accident; therefore, the statistical evidence must be excluded as a matter of law." (Exhibit B, Ford's Motion at page 2, lns. 9-11.)

The second inherent deficiency in the statistical comparisons Mr. Wecker made between the Explorer and other "compact" utility vehicles is the fact that many of the vehicles the expert used in the comparison are not substantially similar to the Ford Explorer. For example, Mr. Wecker includes a number of super short wheel base vehicles in his comparisons, such as the Toyota Rav4, the Suzuki Samurai, the GM Tracker and the Suzuki Sidekick, all of which have substantially

shorter wheelbases than any version of the Ford Explorer. In the case of *Meek v. Bridgestone/Firestone, et al.,* Superior Court of the State of California, County of Tulare, Case No. 01-0194453, Mr. Wecker admitted that he was aware of the possible influence of wheelbase in increasing rollover propensity, but that he had made no effort to study the issue. (Exhibit "C," Wecker deposition in *Meek*, at pgs. 120:2 – 121:19.)

Although Plaintiff has not specifically seen Mr. Wecker's charts listed by Ford as exhibits in this case, (these charts represent 276 of Ford's listed exhibits in this case. See Exhibit "D," portions of Ford's exhibit list containing Wecker exhibits.), we assume that the charts have not changed from other Explorer cases Mr. Wecker has been deposed in. By including dis-similar vehicles in his comparison to the Explorer, Wecker presents a misleading picture of the Explorer. For example, in his chart entitled *Fatal Vehicle Rates in Single Vehicle Accidents (Two-door Four-Wheel Drive Compact Utility Vehicles)*, the 1995-2000 Explorer is in the fifth position on the chart. Two of the four vehicles that appear to have higher fatal vehicle rates than the Explorer are a GM Tracker and a Jeep Wrangler, both of which have much shorter wheelbases that the Explorer. (See Exhibit "E," Chart 15.) A similar chart entitled *Fatal or Major Injury Vehicle Rates (Two-Door Four-Wheel-Drive Compact Utility Vehicles)*, show four vehicles. The Explorer is in the second position. The only vehicle worse than the Explorer on this chart is again the GM Tracker, which has a much shorter wheel base than the Explorer. (Exhibit "E," Chart 29.) In a chart comparing rates of fatal injury in fatal rollover accidents involving four-door compact utility vehicles, the Explorer is shown somewhere in the middle, but three of the five vehicles that appear to have higher rollover fatality rates are again super short wheel base vehicles. (Exhibit "E," Chart 43.)

Two other charts provide similar examples, but also illustrate another misleading manner in

which the data is depicted by Wecker. In a chart entitled *Fatal Rollover Vehicle Rates (Four-Door TwoWheel Drive Compact Utility Vehicles) (1995-2000 model year)* and *Fatal Rollover Vehicle Rates in Single Vehicle Accidents (Four-Door Two-Wheel-Drive Compact Utility Vehicles (Model Year 1995-2000)*, the vehicles include the Honda Passport and the Isuzu Rodeo. These vehicles are depicted separately, even though the Honda Passport and the Isuzu Rodeo are the exact same vehicle. (Exhibit "E," Charts 71 and 73). While Mr. Wecker speculated in his deposition in the *Meek* case that the reason for different accident rates in the exact same vehicle might be that there were some differences in the drivers of those vehicles, he acknowledged that he has not studied that issue and cannot explain it. (Exhibit "C," Wecker deposition, at 124:14 – 125:14.)

For the reasons stated above as well as for the reasons that follow, the statistical analysis and opinions offered by Ford's expert are improper, irrelevant, and inherently misleading and should be excluded.

I.  **Ford's Statistical Comparison of Accident rates between the Ford Explorer and other vehicles is irrelevant, misleading and inadmissible under *Daubert*.**

The Supreme Court has just charged this Court and all other Federal District Courts with a duty to carefully scrutinize **all expert testimony** under Fed. R. Evid. 702 using the factor-based approach of *Daubert*. Thus, this Court must exercise its "gate keeping" function to screen expert's testimony and the basis thereof.

In *McCorvey v. Baster Healthcare Corp.*, 298 F.2d 1253, 1256 (11th Cir. 2002), the Eleventh Circuit held that in deciding whether the reliability requirements of Rule 702 are met, "*Daubert* instructs courts to consider the following factors: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the

5

technique is generally accepted in the scientific community." *McCorvey*, 298 F.3d at 1256 (citing *Daubert*, 509 U.S. at 593-94). Of even greater importance when it comes to the proposed testimony of William Wecker, Federal Rule of Evidence 702 requires a finding that the expert "has applied the principle and methods reliably to *the facts of the case*, in order for the expert's testimony to be admissible. As stated above, nowhere in Mr. Wecker's report and the materials he reviewed to prepare his report, does it say that:

1. he reviewed any of the accident reports in any of the comparison accidents upon which he relies;

2. he compared the accident in this case to similar types of accidents contained in the databases upon which he relies;

3. he made any effort to eliminate any dis-similar accidents from his statistics.

The failure to eliminate dis-similar accidents from the comparison is a fatal flaw which makes the entire exercise inherently suspect, misleading, inadmissible, highly prejudicial and utterly lacking in probative value. As Darrell Huff observes in his book, *How to Lie With Statistics*:

> The secret language of statistics, so appealing in a fact-minded culture, is employed to sensationalize, inflate, confuse and oversimplify. Statistical methods and statistical terms are necessary in reporting the mass data of social and economic trends, business conditions, opinions, "opinion" polls, the census. But without writers who use the words with honesty and understanding, and readers who know what they mean, the result can only be semantic nonsense.

*How to Lie With Statistics* – Darrell Huff, (1954), page 8.

While this issue most often arises when a plaintiff attempts to introduce proof of the existence of other accidents to establish negligence, a design defect, or notice of defect, the test of "substantial similarity" has been applied with equal vigor when a defendant attempts to introduce evidence based on other accidents, albeit thinly disguised in the form of statistical data. See *Baker*

6

as a part of a statistical compilation. In fact, a court could not be clearer on this issue as in the case of *Wagner v. GM*, where the judge stated in regard to Mr. Wecker's testimony, as follows:

> It [Wecker's testimony] is pure garbage plus. Motion granted. I will tell the jury to ignore all of this with pleasure. (See Transcript of Proceedings, pages 1653: 14-16);
>
> I consider the last 45 minutes of testimony the biggest waste of time I have listened to in almost 60 years as a trial judge and trial attorney. I refuse to impose this kind of – and I use the term advisedly – garbage on intelligent jurors. I will advise the jury to ignore everything they have heard. Let's get out there." (Id. At page 1654).

(Exhibit "G," testimony of William Wecker in *Wagner v. GM*, and the Court's comments in striking his testimony.)

In addition to the *GM* case, Mr. Wecker's testimony has also been excluded in the cases of *Steen v. Bombardier*, In the Circuit Court for Elmore County, Alabama, Civil Action No. CV-2001-286; *Howard v. Ford Motor Company*, U.S. District Court for the Middle District of Georgia, Macon Division, Civil Action No. 5:00-CV-448-3; *Stewart v. Pevey and Ford*, Superior Court of Bulloch County, State of Georgia, Civil Action File No. 1B01CV229; and *Harsh v. Petroll*, The Court of Common Pleas of Lancaster County, Pennsylvania, Case No. 4852-1997. (See Exhibit "F.")

Further, statistical data similar to Wecker's has been excluded in a number of similar cases. For example, in *Benson v. Honda Motor Co.*, (1994) 26 Cal.App. 4th 1337, the court excluded statistical evidence of the frequency with which seats collapsed causing injury in vehicles, which the plaintiff attempted to introduce in a product liability auto design defect case. Also, in *Grimshaw v. Ford Motor Co.*, (1981) 119 Cal. App. 3d 757, involving a defective fuel system, the

court refused to allow Ford to present a statistical study allegedly showing that the Pinto "proportionately produced no greater chance of producing injury or death than other vehicles."

## II.     Wecker's "statistical data" does not meet the requirements of Fed. R. Evid. 702.

Wecker's statistical data is unreliable, misleading and does not pass muster under Fed. R. Evid. 702. Rule 702 says:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience training, or education, may testify thereto in the form of an opinion or otherwise.

While the rule itself does not mention the standards by which admissibility of expert testimony is to be determined, the Supreme Court held that trial judges have a "gatekeeping" function and set out several factors that are to be flexibly applied when scrutinizing expert testimony. *See Daubert*, 509 U.S. at 597 (trial judge has "task of insuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). In general, the offered evidence must have a valid connection to the pertinent issue, and where the expert's "factual basis, data, principles, methods, or their application are called sufficiently into question. . .the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire*, 199 S.Ct. at 1175 (citing *Daubert*, 509 U.S. at 592). The *Daubert* standard is to be applied to engineers as well as "scientific" experts. *Kumho Tire*, 119 S.Ct. at 1174.

## III.    Wecker's statistics are unfairly prejudicial.

Nothing in "'the Federal Rules of Evidence requires a district court to admit opinion testimony which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great of an analytical gap between the data and the opinion

8

proffered.'" *Grant v. Bristol-Myers Squibb*, 97 F.Supp.2d 986, 992 (D. Ariz. 2000)(quoting *General Electric Company v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997)). *See e.g., Cotterhill v. Bafile*, 865 P.2d 120 (Ariz. App. 1993)("evidence of prior incidents at the lounge should not have been admitted because those incidents were not substantially similar to the incident in which Cotterhill was injured")(citing *Burgbacher v Mallor*, 543 P.2d 1110, 1112 (Ariz. 1976)(" if the proper foundation is established, evidence of similar accidents at or near the same place at a time not too remote from the accident in question is admissible."); *Slow Development Corp. v. Coulter*, 353 P.2d 890 (Ariz. 1960)("It is also well settled that in order to permit the admission of testimony of previous accidents it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.").

In *Recreational Developments of Phoenix v. City of Phoenix*, 220 F.Supp.2d 1054, 1061 (D. Ariz. 2002), the court found an expert's testimony inadmissible because the expert's:

> Report includes statistical assertions that are not based on any identifiable study design or even basic sampling techniques. The probative value of such evidence is far outweighed by its potential to mislead and confuse the fact-finder. *See Fed.R.Evid. 403*; *Martincic v. Urban Redevelopment Auth. of Pittsburgh*, 844 F.Supp. 1073, 1075-76 (W.D.Pa.1994) (excluding statistical report as prejudicial under Rule 403 where expert "offered no semblance of statistical analysis that would breathe life into his bare numbers"); *United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir.1993) (noting that even admissible expert testimony is properly excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay").

At this juncture, Wecker has not turned over his data, thus plaintiff has not been able to see if he used an "identifiable study design or even basic sampling technique." Further, Wecker's use of death or injury rates from completely different types of accidents involving completely different circumstances has no probative value in this case. The statistics-based testimony and opinions

offered by Ford do nothing more than compare the Explorer's accident rates against other vehicles in order to support Ford's argument that the Explorer is no worse than other vehicles. Such testimony does not relate to appropriateness of the design of the vehicle or whether the design is defective. The fact that other sport utility vehicles may also roll over, and the frequency with which the Explorer and other vehicles are involved in various accidents is not probative of any issue or defense in this case. As stated, Ford's experts' analyses include all different types of vehicles involving all sorts of different accidents occurring under all sort of different conditions. None of this information helps the jury in this case to determine whether this Ford Explorer is defective or why the subject Ford Explorer rolled over under the particular circumstances of the Miller accident. See e.g., *Kloepfer v. Honda Motor Co.*, 898 F. 2d 1452 (10th Cir. 1990)(rejecting ATV manufacturer's attempt to introduce statistical evidence of injuries caused by ATV's manufactured by other manufacturers, when offered to show theirs was no worse than anyone else's).

Finally, the court may already be aware of this now famous exchange between the Western District of Washington and defendant's counsel which illustrates the confusion and prejudice of statistical risk analysis:

> COUNSEL: Statistical data is a completely different methodology than what the plaintiff's burden is in having to show evidence of similarity for defect . . . . The comparative analysis that Doctor McCarthy is going to be utilizing, it involves taking the risk data from the pool of all available information and putting that under consideration and determine whether or not a policy or a product is or is not unreasonably dangerous.
>
> It is the most scientific tool used today by all government agencies. NHTSA uses it, the Environmental Protection Agency uses it. They all use statistical data to determine safety.
>
> COURT: Counsel, I love it. I've been waiting for somebody to

actually make that argument, and I hope you didn't mean to make that argument you just made. Of course it matters what the statistics are based on, otherwise statistics can say anything, and that's the problem we have with statistics, especially in a court of law.

        COUNSEL:   Yes, Your Honor.

        COURT:     The statistics must be based on a relevant foundation and that foundation must conform to the case we have before us.

        COUNSEL:   Yes, Your Honor.

        COURT:     So it will be a matter of laying an adequate foundation. You are going to have to convince the Court that statistics are based on sufficiently similar accidents and incidents before they can come in. Just saying that, well, there are just statistics, therefore we are only dealing with statistics and we know that they are scientific, uh-uh, that doesn't get you there. Out of the presence of the jury I'm going to have to be persuaded that his statistics are based on similar enough accidents so that they warrant coming in. If they are not ..., they're not coming in ... But statistics alone, the fact that somebody had done a sampling of different situations doesn't get you there.

*Kenneally v. Suzuki Motor Corp.*, Case No. C93-0867R (W.D. Wash.) at 44-45.

### IV. Ford's Statistical Comparison Of Accident Rates Between The Ford Explorer And Other Dissimilar Vehicles Is Outweighed By Prejudice And Consumption Of Time.

"Federal Rule Evidence 403 provides that relevant evidence may be excluded if its probative value is outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Crumby*, 895 F.Supp. 1354 (D. Ariz. 1995).

Plaintiff's claim here is that the Ford Explorer in which her deceased husband was driving was defective and unreasonably dangerous. Ford's experts' testimony, based as it is on statistical aggregation, will only confuse the issues and claims to be tried. The jury will be misled into thinking that they must decide whether all makes or brands of SUVs are defective. There is no case or other authority in Florida standing for the proposition that if a certain vehicle

11

is not the worst on any given statistical chart, it is not defective. Thus, Ford's "evidence" does not tend to prove or disprove the question of whether the Miller Explorer is defective. The "evidence" instead intentionally deflects away from the real issue.

Indeed, by way of example, if this were a lawsuit against Jack-in-the-Box for an injury from ingestion of e. coli in hamburgers, at issue would be whether the Jack-in-the Box hamburger cooking design was defective. Jack-in-the-Box would not be excused from product liability by showing that more children have died from ingesting hamburgers made using the McDonalds or Burger King cooking process. Nor would Jack-in-the-Box be permitted to put in statistical testimony that it is a "mid-runner" in e. coli poisonings across any number of prepared foods, including juice and mayonnaise. Nor could it argue that its burgers were not defective because any person in the United States has a greater relative risk of dying from another tragedy at any given time. The misleading nature of the resulting statistical comparisons is obvious. By including such dissimilar vehicles in his analysis, Ford's experts manage to make the Explorer look better than it is in comparison to its real peers.

In sum, because any probative value of the evidence is substantially outweighed by the danger of unfair prejudice and consumption of time, evidence regarding statistical comparison of accident rates between the Ford Explorer and other dissimilar vehicles should be excluded. *See Olsen v. Marriott International Inc.*, 75 F.Supp. 2d 1052 (D. Ariz. 1999)("Rule 702 requires that an expert's testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'").

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court exclude from trial

evidence and testimony of or based on statistics proffered by Ford's experts, and prohibiting Defendant Ford from attempting to introduce any statistical evidence, as any such evidence is irrelevant and/or unduly prejudicial and an undue waste of time. This should include any evidence form Dr. Wecker or any other person Ford tries to elicit statistical information from, including Ford's expert witness, Lee Carr. Ford should further be barred from making any statements about statistics during opening, closing or otherwise during trial.

## LOCAL RULE 3.01(g) CERTIFICATE

In accordance with Local Rule 3.01(g), counsel for Plaintiff conferred with Defendants' counsel prior to the filing of the instant motion in a good faith effort to resolve the matters contained herein. Defendants oppose this motion.

**WHEREFORE**, for the reasons stated, Plaintiff prays that this Court grant her motion to exclude at trial all evidence of and any references to statistical data,

Respectfully submitted,

Richard L. Denney/OBA No. 2297
Lydia JoAnn Barrett, OBA No. 11670
DENNEY & BARRETT, P.C.
870 Copperfield Drive
Norman, OK 73072
Telephone: (405) 364-8600
Facsimile: (405) 364-3980

VILES & ELLIS, P.A.
Marcus W. Viles
P. O. Box 2486
Fort Myers, FL 33902
Tel: (239) 334-3903
Fax: (239) 334-7105

13

BRUCE R. KASTER, P.A.
Bruce R. Kaster
P. O. Box 100
Ocala, FL 34478-0100
352-622-1600 (phone)
352-622-1611 (fax)

COUNSEL FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U. S. Mail to **Frederick J. Fein**, Attorney for Cooper Tire, Brickell Bayview Centre, #2900, 80 S. W. 8th Street, Miami, FL, 33130; **Carlos Zumpano** and **Wendy Lumish** and **Francis M. McDonald**, Carlton Fields, P.A., Bank of America Tower, 100 S. E. 2nd Street, #4000, Miami, FL, 33131, Attorneys for Ford Motor Company; **Mark S. Howard**, Carlton Fields, P.A., P. O. Box 3239, Tampa, FL, 33601-3239, Counsel for Ford Motor Company, this 18th day of June, 2004.

By: _____
Lydia JoAnn Barrett

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

ESTATE OF ROBERT HAROLD MILLER,
By and through its Personal
Representative, JEAN MILLER,

    Plaintiff,

vs.                               Case No.: 2:01-CV-545-FtM-29DNF

FORD MOTOR COMPANY, a foreign
Corporation and COOPER TIRE & RUBBER
COMPANY, a foreign corporation,

    Defendants.
_____/

## ORDER ON PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING TESTIMONY AND EVIDENCE RELATING TO ACCIDENT STATISTICS

This matter comes on before the Court upon Plaintiffs' Motion in Limine to Preclude Defendants from Introducing Testimony and Evidence Relating to Accident Statistics. After review of the record, the Court finds the same to be just and appropriate.

IT IS THEREFORE ORDERED that Defendants, Defendants' witnesses or Defendants' counsel are prohibited from directly or indirectly referring to, inquiring about, introducing, arguing or mentioning in any way throughout the course of this trial, including but not limited to the Voir Dire, Opening and Closing Statements and questioning of witnesses, all evidence of and any references to accident statistics.

    Done this ___ day of _____, 2004.

                                          _____
                                          U.S. District Court Judge



# ATTACHMENT(S)

# NOT

# SCANNED

\_\_ Exceeds scanner's page limits
\_\_ Physical exhibit prevents scanning
X Other: Exhibits

**\*\*PLEASE REFER TO COURT FILE\*\***